## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DHAMIAN A. BLUE<br>811 Glenwood Avenue<br>Raleigh, NC 27605<br><br>    Plaintiff,<br><br>v.<br><br>THE FORWARD MOMENTUM GROUP, LLC<br>1612 15th Street, NW<br>Washington, DC 20009<br><br>    Serve: Author J. Johnson<br>           2831 11th Street, NW<br>           Washington, DC 20009<br><br>and<br><br>AUTHOR J. JOHNSON<br>2831 11th Street, NW<br>Washington, DC 20009<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

NOW COMES Plaintiff Dhamian A. Blue and states as follows:

### NATURE OF THE ACTION

1.     This is an action for compensatory damages and/or specific performance, treble

damages, and punitive damages against Defendants The Forward Momentum Group, LLC

("FMG") and Author J. Johnson, who, by virtue of their failure to honor their commitments

pursuant to written contracts, have caused Plaintiff to suffer a significant economic loss and the

lost opportunity to purchase unique real property.

2.      As alleged in greater detail below, Defendants FMG and Johnson, who are one in the same, agreed to sell to Plaintiff real property located in the District of Columbia. Defendants subsequently breached the aforementioned sales contract and then entered into a settlement agreement to remedy their breach. They have since refused to honor any of their contractual obligations.

## JURISDICTION AND VENUE

3.      Diversity jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1332(a)(1). Plaintiff resides in the State of North Carolina. Defendant Forward Momentum Group, LLC ("FMG") is organized under the laws of the District of Columbia, and has its principal place of business there. Defendant Johnson is a resident of the District of Columbia.

4.      The amount in controversy exceeds $75,000.00, exclusive of interest or costs.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(a). The property that is the subject of this lawsuit is situated in the District of Columbia, and the contracts complained of herein were negotiated and entered into in the District of Columbia.

## PARTIES

6.      Plaintiff Dhamian A. Blue is a resident of Raleigh, North Carolina.

7.      Defendant FMG is a domestic limited liability company, organized under the laws of the District of Columbia, and is the owner of the real property located at 2831 11th Street, NW, Washington, D.C., Unit #2 (the upstairs unit), Lot 0052, Block/Square 2857 (the "Subject Property"). At all times relevant hereto, FMG has been engaged in the business of residential real estate development.

8.      Defendant Author Johnson is the principal and sole shareholder of FMG.

## FACTS COMMON TO ALL COUNTS

9.     On November 21, 2006, Plaintiff and FMG entered into a sales contract (the "Sales Contract"), wherein FMG agreed to sell to Plaintiff the Subject Property for $399,999.00.

10.     Pursuant to the Sales Contract, Plaintiff delivered an earnest money deposit in the amount of $15,000.00 to Bayer & Kaufman LLP, who held said deposit in escrow.

11.     The Sales Contract established May 31, 2007 as the settlement date for the consummation of the sale of the Subject Property.

12.     A true and correct copy of the Sales Contract is attached hereto at Exhibit A, and is incorporated herein by reference.

13.     On or about December 5, 2006, Defendant Johnson requested of Plaintiff permission to access the earnest money deposit to complete renovations on the Subject Property.

14.     On April 3, 2007, Plaintiff and FMG executed a revised promissory note (the "Promissory Note"), wherein Plaintiff agreed to loan to FMG $14,500.00 from the earnest money deposit to complete renovations on the subject unit.

15.     Defendant Johnson is a personal guarantor on the Promissory Note.

16.     A true and correct copy of the Promissory Note is attached hereto at Exhibit B, and is incorporated herein by reference.

17.     Pursuant to the Promissory Note, Defendants Johnson and FMG did, in fact, withdraw $14,500.00 from the funds held in escrow.

18.     Throughout the late winter and early spring of 2007, Defendant Johnson expressed a desire to live in the Subject Property. Consistent with that expression, Defendant Johnson, without Plaintiff's consent, made substantial improvements to the Subject Property that were not set forth in the Sales Contract. Defendant Johnson advised Plaintiff that because of the

improvements Plaintiff would be required either to pay more money to purchase the Subject Property or agree to release Defendants Johnson and FMG from the Sales Contract.

19.     On June 7, 2007 Defendant Johnson, on behalf of FMG, and Plaintiff entered into a modification of the Sales Contract (the "Letter Agreement"), wherein FMG agreed to return the full amount of Plaintiff's earnest money on or before July 7, 2007, and pay an additional $15,000.00 on or before September 1, 2007 in exchange for Plaintiff's agreement to relinquish his equitable rights to the Subject Property

20.     A true and correct copy of the Letter Agreement is attached hereto at Exhibit C, and is incorporated herein by reference.

21.     On or about August 8, 2007, Defendant Johnson paid Plaintiff $9,000.00, and gave several further assurances that the balance of monies owing to Plaintiff were forthcoming and that Plaintiff should be patient.

22.     Beginning in September 2007, Defendant Johnson and FMG stopped communicating with Plaintiff, despite Plaintiff's countless attempts to contact Defendant Johnson through voicemail messages and text messages.

23.     On January 16, 2008, Plaintiff wrote a letter to Defendants Johnson and FMG, thereby giving them formal notice of their breach of the Sales Contract, the Promissory Note, and the Letter Agreement.

24.     Despite having left numerous voicemail messages, e-mail messages, and messages with Defendant Johnson's secretary and/or assistant, Defendant Johnson continues to avoid Plaintiff and refuses to communicate with him.

25.     Upon information and belief, Defendant Johnson now resides at the Subject Property.

26.     Upon information and belief, FMG is Defendant Johnson's alter ego in that

Defendant Johnson dominates the affairs of FMG, co-mingles his personal funds with those of

the company, and does not maintain any other distinction between his personal financial affairs

and those of FMG.

## COUNT I
### Breach of Contract—Letter Agreement

27.     Plaintiff incorporates the allegations set forth in paragraphs 1-26 as if fully set

forth herein.

28.     Defendants Johnson and FMG have breached the Letter agreement by failing to

tender to Plaintiff the $21,000.00 owing to Plaintiff under that agreement.

29.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered

economic losses in the amount of $21,000.00.

## COUNT II
### (In the Alternative)
### Breach of Contract/Specific Performance—Sales Contract

30.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 29 as if

fully set forth herein.

31.     Defendants FMG and Johnson breached the Sales Contract by failing to make any

effort to consummate the sale of the Subject Property on or before May 31, 2007.

32.     Because Defendants FMG and Johnson have refused to return the full balance of

Plaintiff's earnest money deposit and pay additional compensation for Plaintiff's relinquishment

of rights in contravention of the Letter Agreement, the Sales Contract remains in full force and

effect.

33.     As a direct and proximate result of Defendants' breach of the Sales Contract,

Plaintiff unjustly has been prevented from purchasing the Subject Property.

34.     Because the Sales Contract involves unique real property, no adequate remedy at

law exists, and therefore, Plaintiff is entitled to specific performance.

35.     To the extent specific performance no longer is available to Plaintiff as a remedy,

Plaintiff is entitled to compensatory damages in an amount equal to the difference between the

price set forth in the Sales Contract and the fair market value of the Subject Property, and in any

circumstance, an amount not less that the taxable assessment of the property, which at the time of

filing of this Complaint, is an amount in excess of $485,000.00; thus, Plaintiff is entitled to an

amount in excess of $85,000.00.

## COUNT III
## Breach of Covenant of Good Faith and Fair Dealing

36.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through

35 as if fully set forth herein.

37.     Both the Sales Contract and the Letter Agreement contain an inherent covenant of

good faith and fair dealing.

38.     By intentionally making unilateral improvements to the Subject Property without

Plaintiff's consent, and then requiring Plaintiff to release Defendants from the Sales Contract or

agree to pay more money to purchase the Subject Property, Defendants acted in bad faith.

39.     Further, Defendants have acted in bad faith by refusing to return Plaintiff's earnest

money deposit, all the while living in and maintaining FMG's business operations in the Subject

Property.

40.     As a direct and proximate result of Defendants' breach of the covenant of good

faith and fair dealing, Plaintiff is entitled to compensatory damages in an amount in excess of $100,000.00.

## COUNT IV
## Fraud

41.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42.    Defendant Johnson, and subsequently FMG, intentionally misrepresented to Plaintiff that Defendants intended to sell the Subject Property and that the purpose of the Promissory Note was to complete renovations to the Subject Property consistent with the terms and conditions of the Sales Contract and for Plaintiff's benefit and personal use.

43.    In fact, Defendant Johnson and FMG intended, without so advising Plaintiff, to use the Promissory Note as a means to finance renovations to the Subject Property for Defendant Johnson's personal benefit, as exhibited by his current occupancy in the Subject Property. In so doing, Defendants were able to secure exceedingly attractive financing that they would not have been able to secure from a reputable lender.

44.    Defendants' misrepresentations concerned material facts and were intended to deceive Plaintiff.

45.    Moreover, as of the date of filing of this Complaint, Defendants have refused to refund the balance of the earnest money deposit, which was procured by fraud.

46.    As a direct and proximate result of Defendants' fraud, Plaintiff has suffered damages in an amount in excess of $300,00.00.

## COUNT V
### District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.*

47. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiff is a "consumer" as that term is used in D.C. Code § 28-3901(a)(2).

49. Defendants Johnson and FMG are "merchants" as that term is used in D.C. Code § 28-3901(a)(3).

50. The Subject Property is a "good" as that term is used in D.C. Code § 28-3901(a)(7).

51. Defendants Johnson and FMG's conduct as alleged herein, and as set forth in Count IV above violates D.C. Code § 28-3904(e) and (f).

52. Further, Defendants Johnson and FMG's conduct as alleged throughout this Complaint violated D.C. Code § 28-3904(h).

53. As a direct and proximate result of Defendants' violation of the Consumer Protection Procedures Act, Plaintiff has suffered compensatory damages in an amount in excess of $100,000.

54. Further, pursuant to D.C. Code § 28-3905(k), Plaintiff is entitled to treble and punitive damages in an amount in excess of $300,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays of the Court as follows:

A. That he have and recover from Defendants compensatory damages for breach of the Letter Agreement in an amount not less that $21,000.00; or

B. That he have and receive from Defendants specific performance, thereby requiring Defendants to sell to Plaintiff the Subject Property pursuant to the terms and conditions set forth in the Sales Contract; or

C. That he have and recover from Defendants compensatory damages in an amount in excess of $85,000.00 for breach of the Sales Contract;

D. That he have and recover from Defendants compensatory damages in an amount in excess of $100,000.00 for breach of the covenant of good faith and fair dealing;

E. That he have and recover from Defendants compensatory damages in an amount in excess of $300,000.00 for fraud;

F. That he have and recover from Defendants compensatory damages in an amount in excess of $300,000.00 for the violation of D.C. Code § 28-3901 *et seq.*

G. That he have and recover from Defendants treble and punitive damages;

H. That he have and recover from Defendants pre-judgment interest, post-judgment interest, costs incurred in maintaining this action, and reasonable attorney's fees.

I.     That he have and recover from the Defendants such further and other relief

as this Court deems appropriate.

Respectfully Submitted,

Dhamian A. Blue (D.C. Bar No. 488664)
THIGPEN, BLUE, STEPHENS & FELLERS
205 Fayetteville Street Mall, Suite 300
Post Office Box 1730
Raleigh, North Carolina 27602
Telephone: (919) 833-1931
Facsimile: (919) 833-8009
*Counsel for Plaintiff*

Dated: March 6, 2008





## REGIONAL SALES CONTRACT

This SALES CONTRACT ("Contract") is made on _____ **November 14, 2006** _____ ("Contract Date") between
_____ Dhamian ~~DAMON~~ **BLUE** _____ ("Purchaser") and
_____ **THE FORWARD MOMENTUM GROUP LLC** _____ ("Seller") who, among other
things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate
transaction _____ **N/A** _____ ("Listing Company") represents
Seller, and _____ **N/A** _____ ("Selling Company") represents
☐ **Purchaser** or ☐ **Seller.** The Listing Company and Selling Company are collectively referred to as ("Broker"). (If the
brokerage firm is acting as a dual representative for both Seller and Purchaser, then the appropriate disclosure form is
attached to and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and
other good and valuable consideration the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1. **REAL PROPERTY** Purchaser will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in
the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
TAX Map/ID # _____ Legal Description: Lot(s) _____ Block/Square _____ **2857** _____
Section _____ Subdivision or Condominium _____
Parking Space(s) # _____ County/Municipality _____
Deed Book/Liber # _____ Page/Folio # _____
Street Address _____ **2831 11TH STREET, NW**
Unit # **2** _____ City _____ **WASHINGTON** _____ State _____ **DC** _____ Zip Code _____

2. **PRICE AND FINANCING**
   PURCHASERS TERMS OF FINANCING NOT YET DETERMINED.
   **A. Down Payment** _____ $ _____

   **B. Financing**  1. First Trust (if applicable) _____ $ _____

   2. Second Trust (if applicable) _____ $ _____

   3. Seller Held Trust _____ $ _____
   Addendum attached (if applicable)

   **TOTAL FINANCING** _____ $ _____ TBD

   **SALES PRICE** _____ $ _____ **399,999.00**

3. **DEED(S) OF TRUST**  — TBD

   A. **First Deed of Trust** Purchaser will ☐ **Obtain** or ☐ **Assume**
   a ☐ **Conventional** ☐ **FHA** ☐ **VA** ☐ **Other** _____ First Deed of Trust loan amortized over
   _____ years at a ☐ **Fixed** or an ☐ **Adjustable** rate bearing (initial) interest of _____ % per year or
   market rate available. Special Terms (if any): _____

   B. **Second Deed of Trust** Purchaser will ☐ **Obtain** or ☐ **Assume**
   a Second Deed of Trust loan amortized over _____ years at a ☐ **Fixed** or an ☐ **Adjustable** rate bearing
   (initial) interest of _____ % per year or market rate available. Special Terms (if any): _____

9/06

GCAAR Form # 1301 - Regional Sales Contract _____ Page 1 of 10 _____ Please Initial: Seller _____ / _____ Purchaser _____

Bayer & Kaufman LLP 2011 Pennsylvania Avenue, NW, 5th floor, Washington DC 20006
Phone: (202) 466-4747     Fax: (202) 466-2020     Mark Bayer
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michig

**EXHIBIT**

**A**

DAMON

**C. Assumption Only** Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser. If Purchaser assumes Seller's loan(s): (i) Purchaser and Seller ☐ will, or ☐ **will not** obtain a release of Seller's liability to the U.S. Government for the repayment of the loan by Settlement, (ii) Purchaser and Seller ☐ **will**, or ☐ **will not** obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary financing and cash down payments are approximate.

## 4. DEPOSIT

**A.** Purchaser has delivered a deposit ("Deposit") to _____ BAYER & KAUFMAN LLP _____ ("Escrow Agent") of ☒ $~~25,000.00~~ _____ by check and/or ☐ $ _____ N/A _____ by note due and payable on ____ 11/21/2006 ____ .    $15,000 ☒    ⒜Ⓢ

**B.** The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Purchaser agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

**5. DOWN PAYMENT** The balance of the down payment will be paid on or before the Settlement Date by certified or cashier's check or by bank-wired funds. An assignment of funds shall not be used without prior written consent of Seller. ⒜Ⓢ ⒷⒷ

**6. SETTLEMENT** Seller and Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, ~~July 15, 2007~~ ~~June 30, 2007~~ May 31, 2007 ("Settlement Date") except as otherwise provided in this Contract. Purchaser selects: **BAYER & KAUFMAN LLP** _____ ("Settlement Agent") to conduct the Settlement. (For transactions in Virginia, use the Virginia Jurisdictional Addendum to select the Settlement Agent.) Either party may retain their own legal counsel. Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to arrange for ordering the title exam and, if required, a survey.

**7. EQUIPMENT, MAINTENANCE AND CONDITION** Purchaser accepts the Property in the condition as of the Contract Date except as otherwise provided herein. Seller warrants that, except as otherwise provided, the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as required), will be in normal working order as of the Possession Date. Seller will deliver the Property in substantially the same condition as on the Contract Date and broom clean with all trash and debris removed. Purchaser and Seller will not hold the Broker liable for any breach of this paragraph. Seller will have all utilities in service through Settlement or as otherwise agreed.

**8. UTILITIES - WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING** (Check all that apply)

| | | | | | | |
|---|---|---|---|---|---|---|
| Water Supply: | ☒ Public | ☐ Private Well | | ☐ Community Well | | |
| Sewage Disposal: ☒ Public | ☐ Septic for # BR _____ | | | ☐ Community Septic | ☐ Alternative Septic for # BR: _____ | |
| Hot Water: | ☐ Oil | ☒ Gas | ☐ Elec. | ☐ Other _____ | | |
| Air Conditioning: ☐ Oil | ☐ Gas | ☒ Elec. | ☐ Heat Pump | ☐ Other _____ | ☐ Zones _____ | |
| Heating: | ☐ Oil | ☐ Gas | ☒ Elec. | ☐ Heat Pump | ☐ Other _____ | ☐ Zones _____ |

9/06

9. **PERSONAL PROPERTY AND FIXTURES** The Property includes the following existing personal property and fixtures: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey. If more than one of an item convey, the number of items is noted.

**The items marked YES below are currently installed or offered.**

| Yes No # | Items | Yes No # | Items | Yes No # | Items |
|---|---|---|---|---|---|
| ☐ ☐ | Alarm System | ☐ ☐ | Freezer | ☐ ☐ | Satellite Dish |
| ☐ ☐ | Built-in Microwave | ☐ ☐ | Furnace Humidifier | ☐ ☐ | Storage Shed |
| ☐ ☐ | Ceiling Fan | ☐ ☐ | Garage Opener | ☐ ☐ | Stove or Range |
| ☐ ☐ | Central Vacuum | ☐ ☐ | w/ remote | ☐ ☐ | Trash Compactor |
| ☐ ☐ | Clothes Dryer | ☐ ☐ | Gas Log | ☐ ☐ | Wall Oven |
| ☐ ☐ | Clothes Washer | ☐ ☐ | Hot Tub, Equip. & Cover ☐ | ☐ | Water Treatment System |
| ☐ ☐ | Cooktop | ☐ ☐ | Intercom | ☐ ☐ | Window A/C Unit |
| ☐ ☐ | Dishwasher | ☐ ☐ | Playground Equipment | ☐ ☐ | Window Fan |
| ☐ ☐ | Disposer | ☐ ☐ | Pool, Equip. & Cover | ☐ ☐ | Window Treatments |
| ☐ ☐ | Electronic Air Filter | ☐ ☐ | Refrigerator | ☐ ☐ | Wood Stove |
| ☐ ☐ | Fireplace Screen/Door ☐ | ☐ | w/ ice maker | | |

**OTHER** _____

_____

_____

**AS IS ITEMS**

Seller does not warrant the condition or working order of the following items and/or systems:

_____

_____

If entire Property is sold "As Is", appropriate addendum must be attached.

**LEASED ITEMS**

Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT CONVEY absent an express written agreement by Purchaser and Seller. The following is a list of the leased items within the Property:

_____

_____

10. **CONVENTIONAL FINANCING TERMS**

A. **SELLER SUBSIDY** Based on the financing terms specified in this Contract, Seller will pay at Settlement $ _____ toward Purchaser's charges, (including but not limited to loan origination fees, discount fees, buy down or subsidy fees, prepaids or other charges as allowed by the lender). Purchaser will pay all remaining Purchaser's charges. If applicable, Purchaser will pay at Settlement or finance any initial private mortgage insurance required by lender. It is Purchaser's responsibility to confirm with his lender, if applicable, that the entire credit provided herein may be utilized. If lender prohibits Seller from the payment of any portion of this credit, then said credit shall be reduced to the amount allowed by the lender.

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          DAMON

## B.  APPRAISAL (Must Select Option 1 or 2)



☐  **Option (1)** This Contract **is contingent** on Purchaser obtaining an Appraisal certifying the value of the Property to be no less than the Sales Price. See Attached Addendum. **If the appropriate Appraisal Contingency Addendum is not attached, this Contract is not contingent on an Appraisal and Option (2) below will apply.**

OR



☒  **Option (2)** This Contract **is not contingent** on an Appraisal. Purchaser shall complete Settlement without regard to the value of the Property set forth in any Appraisal and acknowledges that this may reduce the amount of financing available from lender and may require Purchaser to tender additional funds at Settlement. If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (Default) shall apply.

## C.  FINANCING (Must Select Option 1 or 2) Not to be used with Seller Financing



☐  **Option (1)** This Contract **is contingent** on Purchaser obtaining approval for loan(s) to purchase the Property (The "Financing Contingency").

This Contract is contingent until 9 p.m. _____ Days after Date of Ratification ("Financing Deadline") upon Purchaser Delivering Notice to Seller on the Regional Form #100 removing this Financing Contingency. Such Notice ☐ **shall** or ☐ **shall not** be accompanied by a letter from the lender ("Lender's Letter"). Such Lender's Letter shall include the following statements or statements substantially similar thereto:

1) Purchaser is approved for the Specified Financing,
2) a ratified Contract has been received,
3) a written application for the financing has been made,
4) income, asset, and liability documentation on Purchaser have been received,
5) Purchaser's credit has been reviewed, and
6) the application has been reviewed and meets underwriter and investor guidelines.

If Purchaser fails to Deliver Regional Form #100 and Lender's Letter (if required) by the Financing Deadline, this contingency will continue, unless Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If Seller Delivers such Notice this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice unless prior to that date and time:

a) Purchaser Delivers to Seller Regional Form #100 and Lender's Letter (if required); or

b) Purchaser Delivers to Seller Regional Form #100 and provides Seller with evidence of sufficient funds available to complete Settlement without obtaining financing.

Upon Delivery to Seller of either (a) or (b) above, this Contract will no longer be contingent on Purchaser being approved for the Specified Financing and this Contract will remain in full force and effect.

Prior to satisfaction or removal of the Financing Contingency, if Purchaser receives a written rejection for the Specified Financing and Delivers a copy of the written rejection to Seller, this Contract will become void.

OR

☒  **Option (2)** This Contract is **not contingent** upon Purchaser obtaining approval for loan(s) to purchase the Property. Purchaser acknowledges that there is not a Financing Contingency. Purchaser has provided sufficient documentation to satisfy Seller that Purchaser has been approved for the Specified Financing or has sufficient funds available to complete Settlement without obtaining financing. If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT) shall apply.

9/06

GCAAR Form # 1301 - Regional Sales Contract          Page 4 of 10          Please Initial: Seller _____ Purchaser _____

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          DAMON

**11.** ☐ **VA or** ☐ **FHA FINANCING AND APPRAISAL**

Purchaser will ☐ **pay at Settlement, or** ☐ **finance** any VA Funding Fee or FHA initial Mortgage Insurance Premium. Based on the Specified Financing in this Contract, the Seller will pay _____ toward Purchaser's charges (including but not limited to loan origination fees, discount fees, buydown or subsidy fees, prepaids or other charges as allowed by the lender) except that the total amount of any lender charges which cannot by law or regulation be charged to Purchaser will be paid by the Seller. These charges, if any, will first be deducted from any Seller credit, and the remaining balance, if any, will then be applied to Purchaser's other charges. Purchaser will pay all remaining Purchaser's charges. If VA or FHA financing applies, it is expressly agreed that, notwithstanding any other provisions of this Contract, Purchaser will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner or Direct Endorsement Lender/Department of Veterans Affairs or the Lender Approval Processing Program (LAPP) underwriter setting forth the appraised value of the Property (excluding closing costs) of not less than $ _____ . Purchaser will have the privilege and option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation. THE APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGE THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT/DEPARTMENT OF VETERANS AFFAIRS WILL INSURE/GUARANTEE. HUD/DEPARTMENT OF VETERANS AFFAIRS AND THE MORTGAGEE DOES NOT WARRANT THE VALUE NOR THE CONDITION OF THE PROPERTY. PURCHASER SHOULD SATISFY HIMSELF/HERSELF THAT THE PRICE AND CONDITION OF THE PROPERTY ARE ACCEPTABLE. If VA Financing applies, Purchaser agrees that should Purchaser elect to complete the purchase at an amount in excess of the reasonable value established by the Department of Veterans Affairs, Purchaser shall pay such excess amount in cash from a source which Purchaser agrees to disclose to the Department of Veterans Affairs, and which Purchaser represents will not be borrowed funds except as approved by the Department of Veterans Affairs. Purchaser's exercise of the option shall be made in writing within 3 Days of the notification to Purchaser of the appraised value, or this Contract shall become void. If FHA financing applies, Purchaser's exercise of the option of proceeding with consummation of this Contract without regard to the amount of the appraised valuation shall be made in writing within 3 Days of the notification to Purchaser of the appraised value, or this Contract shall become void.

**12.  FINANCING APPLICATION** If this Contract is contingent on financing, Purchaser will make written application for the Specified Financing and any lender required property insurance no later than 7 days after the Date of Ratification. Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information available about the progress of the loan application and loan approval process. If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT) shall apply.

**13.  ALTERNATE FINANCING** Purchaser may substitute alternative financing and/or an alternative lender for Specified Financing provided:

    (a) Purchaser is qualified for alternative financing;

    (b) There is no additional expense to Seller;

    (c) The Settlement Date is not delayed; and

    (d) If Purchaser fails to settle except due to any Default by Seller, then the provisions of paragraph #26 (DEFAULT) shall apply.

**14.  PURCHASER'S REPRESENTATIONS** Purchaser ~~will~~, or ☑ **will not** occupy the Property as Purchaser's principal residence. **Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** The Selling Company ☐ **is, or** ☐ **is not** authorized to disclose to the Listing Company and Seller the appropriate financial or credit information statement provided to the Selling Company by Purchaser. Purchaser acknowledges that Seller is relying upon all of Purchaser's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker or the lender by Purchaser.

**15.  ACCESS TO PROPERTY** Seller will provide the Broker, Purchaser, inspectors representing Purchaser and representatives of lending institutions for Appraisal purposes, reasonable access to the Property to comply with this Contract. In addition, Purchaser and/or Purchaser's representative will have the right to make a final inspection within 5 days prior to Settlement and/or occupancy, unless otherwise agreed to by Purchaser and Seller.

GCAAR Form # 1301 - Regional Sales Contract     Page 5 of 10     Please Initial: Seller ____ / ____ Purchaser ____     9/06

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com     DAMON

**16. TERMITE INSPECTION** The ☒ **Purchaser at Purchaser's expense** or ☐ **Seller at Seller's expense**, will furnish a written report from a pest control firm dated not more than 30 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites and other wood-destroying insects, and free from visible structural insect damage. Any extermination and structural repairs identified in the inspection report will be made at Seller's expense.

**17. REPAIRS** If, as a condition of providing financing under this Contract, the lender requires repairs to be made to the Property, then Purchaser will give Notice to Seller of the lender's required repairs. Within 5 Days after such Notice, Seller will give Notice to Purchaser as to whether Seller will make the repairs. If Seller will not make the repairs, Purchaser will give Notice to Seller within 5 Days after Seller's Notice as to whether Purchaser will make the repairs. If neither Seller nor Purchaser will make the repairs, then this Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES; PERSONAL PROPERTY AND FIXTURES; EQUIPMENT, MAINTENANCE AND CONDITION; WELL AND SEPTIC; TERMITE INSPECTION; or OTHER TERMS, or any terms specifically set forth in this Contract and any addenda. If the Property is sold "as is", Purchaser will be responsible for all repairs.

**18. DAMAGE OR LOSS** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Purchaser at Settlement.

**19. TITLE** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Purchaser. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland) ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Purchaser is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders, requirements, or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date.

**20. POSSESSION DATE** Unless otherwise agreed to in writing between Seller and Purchaser, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Purchaser and hereby expressly waives all notice to quit as provided by law. Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Purchaser including reasonable attorney fees.

**21. FEES** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided) survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Purchaser, Purchaser's legal fees and any other proper charges assessed to Purchaser will be paid by Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda).

**22. BROKER'S FEE** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com      DAMON

**23. ADJUSTMENTS** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Purchaser, unless leased. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Purchaser will reimburse Seller for existing escrow accounts, if any.

**24. ATTORNEY'S FEES** In any action or proceeding involving a dispute between Purchaser and Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s). In the event a dispute arises resulting in the Broker being made a party to any litigation or if the Broker is required to bring litigation to collect the Broker's Fee, Purchaser and Seller agree to indemnify the Broker, its employees, and/or licensees for all attorney fees and costs of litigation against the responsible party, unless the litigation results in a judgment against the Broker, its employees and/or licensees.

**25. PERFORMANCE** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

**26. DEFAULT** Purchaser will be in Default even if the Financing Contingency has not been removed if Settlement does not occur on the Settlement Date for any reason other than Default by Seller, including without limitation the following:

A. Failure to lock-in the interest rate(s) and the rate(s) increase so that Purchaser does not qualify for such financing; OR

B. Failure to comply with the lender's reasonable requirements in a timely and diligent manner; OR

C. Application is made with an alternative lender (one other than the lender who provided Lender's Letter) and the alternative lender fails to meet the Settlement Date; OR

D. Does not have the down payment, closing fees and any other required funds, including without limitation, any additional funds required to be tendered by Purchaser if the Appraisal is lower than the Sales Price; OR

E. Makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing; OR

F. Failure to make application for property insurance, if required, by lender within 7 days of Date of Ratification; OR

G. Does or fails to do any act following the Date of Ratification that prevents Purchaser from completing Settlement

If Purchaser fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Purchaser will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Purchaser's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Purchaser, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement). If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Purchaser, Purchaser will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Seller or Purchaser refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either Purchaser or Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

**27. OTHER DISCLOSURES Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. The Broker can counsel on**

GCAAR Form # 1301 - Regional Sales Contract        Page 7 of 10        Please Initial: Seller /____ Purchaser /____        9/06

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com        DAMON

real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Purchaser and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters. The following provisions of this paragraph disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

**A. PROPERTY CONDITION** See paragraph #7 (EQUIPMENT, MAINTENANCE AND CONDITION) Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants;) sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

**B. LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

**C. FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

**D. BROKER** Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

**E. PROPERTY TAXES** Your property tax bill could substantially increase following settlement. For more information on property taxes contact the appropriate taxing authority in the jurisdiction where the Property is located.

**F. PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Purchaser. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

**28. ASSIGNABILITY** This Contract may not be assigned without the written consent of Purchaser and Seller. If Purchaser and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

9/06

GCAAR Form # 1301 - Regional Sales Contract                    Page 8 of 10                    Please Initial: Seller _____ / _____   Purchaser _____ / _____

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com                    DAMON

29. **DEFINITIONS**

    A. "Appraisal" means a written appraised valuation of the Property.

    B. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day.

    C. "Date of Ratification" means the date of final acceptance in writing of all the terms of this Contract (not the date of expiration or removal of any contingencies).

    D. For "Delivery" and "Notices" definitions, see appropriate Jurisdictional Addendum.

    E. "Specified Financing" means the loan type(s) and amount(s), if any, specified in both paragraph #2 (PRICE AND FINANCING) and paragraph #3 (DEEDS OF TRUST).

    F. The masculine includes the feminine and the singular includes the plural.

    G. "Possession Date" - See paragraph #20 (POSSESSION DATE).

30. **MISCELLANEOUS** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

31. **VOID CONTRACT** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that the Deposit be refunded in full to Purchaser according to the terms of the paragraph # 4 (DEPOSIT).

32. **ADDITIONS** The following forms, if ratified and attached, are made a part of this Contract. (This list is not all inclusive of addenda that may need to be attached).

| ☒ Yes | | Jurisdictional Addendum for: | ☒ DC   ☐ VA <br> ☐ WVA | | ☐ MD/County _____ <br> ☐ Other _____ |
|---|---|---|---|---|---|
| ☒ Yes | ☐ No | Addendum of Clauses (DC/MD) | ☐ Yes | ☐ No | Lead Paint Inspection Contingency |
| ☐ Yes | ☐ No | Contingency Clauses (NVAR) | ☐ Yes | ☐ No | Pre Settlement Occupancy |
| ☒ Yes | ☐ No | Condo/Coop Addendum | ☐ Yes | ☐ No | Post Settlement Occupancy |
| ☐ Yes | ☐ No | Dual Agency Form | ☐ Yes | ☐ No | Property Disclosure or Disclaimer |
| ☐ Yes | ☐ No | Designated Agency Form | ☐ Yes | ☐ No | Radon Testing Contingency |
| ☐ Yes | ☐ No | FHA Home Inspection Notice | ☐ Yes | ☐ No | Sale of Home Contingency |
| ☐ Yes | ☐ No | Home Inspection Contingency | ☐ Yes | ☐ No | Seller Held Trust |
| ☒ Yes | ☐ No | Lead Paint Disclosure | ☐ Yes | ☐ No | Well and Septic Contingency |

☐ Yes   ☐ No   Other (specify): _____

33. **HOME WARRANTY** ☐ Yes   ☒ No

Home Warranty Policy paid for and provided at Settlement by: ☐ Purchaser or ☐ Seller.

Cost not to exceed $ _____ . Warranty provider to be _____ .

34. **OTHER TERMS** SEE ATTACHED ADDENDA _____

_____
_____
_____
_____
_____

9/06

GCAAR Form # 1301 - Regional Sales Contract      Page 9 of 10      Please Initial: Seller ___ / ___ Purchaser ___ / ___

**35. ENTIRE AGREEMENT** This Contract will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

**SELLER:**

11-21-06 _____ (SEAL)
Date            Signature

THE FORWARD MOMENTUM GROUP LLC

_____ / _____ (SEAL)
Date            Signature

**PURCHASER:**

11/21/06 _____ (SEAL)
Date            Signature
                DAMON BLUE
                Dhamian

_____ / _____ (SEAL)
Date            Signature

**Date of Ratification** see paragraph #29 (DEFINITIONS) 11-21-06        2:35 p.m.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**For information purposes only:**

| Listing Company's Name and Address: | Selling Company's Name and Address: |
|---|---|
| N/A | N/A |

Office # _____ FAX # _____        Office # _____ FAX # _____

MRIS Broker Code and Office ID _____        MRIS Broker Code and Office ID _____

Agent Name _____        Agent Name _____

Real Estate License Number & Jurisdiction        Real Estate License Number & Jurisdiction

Agent MRIS ID# _____        Agent MRIS ID# _____

Team Leader/Agent _____        Team Leader/Agent _____

Agent Email Address _____        Agent Email Address _____

©2006. This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations.

9/06

GCAAR Form # 1301 - Regional Sales Contract                Page 10 of 10                Please Initial: Seller _____ / _____ Purchaser _____ / _____



 

## Washington, DC Jurisdictional Addendum
(REQUIRED NOTICE AND DISCLOSURE ADDENDUM
FOR USE WITH THE REGIONAL CONTRACT)

The Contract of Sale between _____ THE FORWARD MOMENTUM GROUP LLC _____, Seller, and
_____ Dhamian _____ DAMON BLUE _____, Buyer, dated
___November 14, 2006___ for the sale of Lot _____ Square ____2857____ Parking Space _____,
Subdivision/Condominium Project _____ also known as
_____ 2831 11TH STREET, NW _____ Washington, DC, _____
                        (Address)                                                              (Zip)
is hereby amended by the incorporation of the following paragraphs, which shall supersede any provisions to the contrary in the Contract.

**1. LEAD - BASED PAINT HAZARD.** A Seller who fails to give the required Lead-Based Paint Disclosure Form and Pamphlet may be liable under the Act for three times the amount of damages. The Seller represents that residential Property ☒ was built prior to 1978 OR ☐ was not built prior to 1978 OR ☐ building date is uncertain. If the dwelling(s) was built prior to 1978 or if the building date is uncertain, this Contract is not complete and not ratified unless it includes, and the Seller and Buyer both accept the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards, whereby the Buyer acknowledges receipt of required Lead Paint Information and has either taken the opportunity to incorporate a Lead-Based Paint Inspection contingency or waived such a right. The Seller and any agent involved in the transaction are required to retain a copy of the completed Lead-Based Paint Disclosure form for a period of 3 years following the date of settlement. The Seller and Buyer acknowledge by their respective initials below that they have read and understand the provisions of this paragraph.

_____ / ____ Seller's Initials                          ____ / _____ Buyer's Initials

**2. SELLER DISCLOSURE.** Buyer acknowledges receipt of the Seller's Disclosure Statement pursuant to D.C. Code 45-951 prior to the submission of the offer ☒ Yes ☐ No.

____ / _____ Buyer's Initials

**3. RECORDATION AND TRANSFER TAXES.** The D.C. Recordation Tax will be paid by the Buyer and the D.C. Transfer Tax will be paid by the Seller.

**4. D.C. SOIL DISCLOSURE REQUIREMENTS.** The characteristic of the soil on the subject Property as described by the Soil Conservation Service of the United States Department of Agriculture in the Soil Survey of the District of Columbia published in 1976 and as shown on the Soil Maps of the District of Columbia at the back of that publication is ___U S C___

For further information, the Buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services, or the Soil Conservation Service of the Department of Agriculture.

**5. TENANCY.** Seller represents that property ☐ is ☒ is not subject to an existing residential lease or tenancy.

    a. If the Property is tenant occupied, Buyer hereby certifies that Buyer ☐ will ☐ will not occupy the Property.

    b. The Property is sold and shall be conveyed free of existing tenancy except as follows:
                                      **NONE**

    (hereinafter the "Tenant(s)"). Without the prior written consent of Buyer (which shall not be unreasonably withheld) Seller shall not modify the terms of or terminate such tenancy, except for non-payment of rent or enter into any new leases or tenancies with respect to the Property. Seller represents to Buyer and Agents that on _____ (date), Seller has provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale or will provide same pursuant to the following paragraph. Seller and Buyer further acknowledge that, in addition to the rights under the bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the Property during the period specified by District of Columbia law and regulations.

© 2005, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Bayer & Kaufman LLP 2011 Pennsylvania Avenue, NW, 5th floor, Washington DC 20006                    Phone: (202) 466-4747      Fax: (202) 466-2020      DAMON BLUE zfx
Mark Bayer                    Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

Seller further represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver to the Tenant(s) and send by first-class mail the notice of right of first refusal required by District of Columbia law and regulations and a copy of this Contract. In the event that prior to the date of this Contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the Property and a bona fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this Contract Seller will hand-deliver and send by first class mail to the Tenant(s) a written notice of the intended sale of the Property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this Contract. Upon or after execution of a Contract of sale of the Property between Seller and the Tenant(s), at the option of Buyer (exercisable by written notice to Seller) this Contract shall be void and the deposit hereunder shall be returned to Buyer. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the Property or shall execute and deliver a valid rejection of said rights, then this Contract shall remain in full force and effect. The Seller shall keep Buyer and the Agents apprised of all negotiations, correspondence, Contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.

**6. UNDERGROUND STORAGE TANK DISCLOSURE. (Applicable to single family sales only.)**
In accordance with the requirements of Section 3(g) of the District of Columbia Underground Storage Tank Management Act of 1990 (D.C. Code Section 6-995.2), as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (the "Act") and the regulations adopted thereunder by the District of Columbia (the "Regulations"), Seller hereby informs Buyer that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any underground storage tanks as that term is defined in the Act and the Regulations, except as follows: _____

_____

I hereby certify that I have received and read a copy of the disclosure notice in this paragraph prior to signing this Contract.

Buyer: _____
        DAMON BLUE – Dhamian Blue

**7. FOREIGN INVESTMENT TAXES-FIRPTA:** Section 1445 of the United States Internal Revenue Code of 1986 provides that a buyer of a residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if (a) the purchase price exceeds $300,000.00 or the purchase price is less than or equal to $300,000.00 and the property will not be owner occupied and (b) Seller is a foreign person for purposes of U.S. income taxation (foreign person). A foreign person includes, but is not limited to, a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined by the Internal Revenue Code and applicable regulations). Seller represents that Seller is not a foreign person and agrees to execute an affidavit to this effect at the time of settlement.

**8. CONDOMINIUM/COOPERATIVE/HOMEOWNERS ASSOCIATION:** Seller represents that this property ☒ is ☐ is not subject to a condominium, cooperative or homeowners association that is entitled to assess a mandatory fee. The current fee is _____ per _____ MONTH _____ .

**9. NOTICES.** All notices under the contract shall be in writing. Notices to the Seller shall be effective when delivered to the Seller or an Agent of the Seller named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Seller, as applicable, or alternatively, to the Agent's Supervising Manager.) Notices to the Buyer shall be effective when delivered to the Buyer or an Agent of the Buyer named in the contract (including a Dual Agent, Intra-Company Agent, or Designated Representative assigned to the Buyer, as applicable, or alternatively, to the Agent's Supervising Manager). "Purchaser" means "Buyer" and vice versa. "Delivery" means hand carried, sent by overnight delivery service, sent by wired or electronic medium which produces a tangible record of the transmission (such as telegram, mailgram, telecopier or "Fax", email which includes an attachment with an actual copy of the executed instruments being transmitted, or U.S. Postal mailing.) In the event of overnight delivery service, Delivery will be deemed to have been made on the next business Day (Monday through Friday excluding federal holidays) following the sending, unless earlier receipt is acknowledged in writing. In the event of U.S. Postal mailing, Delivery will be deemed to have been made on the third business Day (Monday through Saturday, excluding federal holidays) following the mailing, unless earlier receipt is acknowledged in writing. "Day" or "Days" means calendar days unless otherwise specified. For the purpose of computing time periods, the first Day will be the Day following Delivery, and the time period will end at 9 p.m. on the Day specified. The provisions of this paragraph regarding delivery of notices shall also be applicable to delivery of resale packages for condominiums, cooperatives and/or homeowners associations as may be required in a separate addendum.

Seller _____   Date 11-21-06

THE FORWARD MOMENTUM GROUP LLC

Buyer _____   Date 11/21/06

DAMON BLUE
Dhamian

Seller _____   Date

Buyer _____   Date

© 2005, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.





# Condominium Resale Addendum for Washington, DC

*(Required Addendum to the Regional Sales Contract for the resale of all condominiums in Washington DC)*

The Contract of Sale dated __November 14, 2006__ , Address _____ __2831 11TH STREET, NW__

City _____WASHINGTON_____ , State _____DC_____ Zip _____ Lot: _____

Block/Square: ___2857___ Unit: ____2____ Section: _____ Tax ID # _____

Parking Space(s) # _____ Storage Unit(s) # _____ Subdivision/Project: _____

between Seller _____ THE FORWARD MOMENTUM GROUP LLC _____ and

Buyer _____ DHAMIAN ~~DAMON~~ BLUE _____ is hereby amended by the

incorporation of this Addendum, which shall supersede any provisions to the contrary in the Contract.

**1.    EQUIPMENT, MAINTENANCE AND CONDITION:** Paragraph is amended to provide that the Seller's warranty applies only to appliances, systems, equipment and detectors that are not the responsibility of the Unit Owners' Association to maintain.

**2.    TITLE:** Paragraph is amended to include the agreement of the Purchaser to take title subject to commonly acceptable easements, covenants, conditions and restrictions of record contained in Condominium instruments, and the right of other Unit owners in the Common Elements and the operation of the Condominium.

**3.    ASSESSMENTS:** Buyer agrees to pay such monthly and/or other assessments as the Board of Directors or Association of the Condominium may from time to time assess against the Unit for the payment of operating and maintenance or other proper charges. Said monthly assessments as of the date hereof amount respectively to:

**A.    Monthly Condominium Fee:** Buyer is hereby advised and acknowledges that the present condominium fee for the subject unit and parking space or storage unit, if applicable, is $ _____ .

**B.    Special Assessments (if any):** In addition to the monthly fee above, the Buyer hereby acknowledges the following existing or levied but not yet collected special assessments:

1) Reason for Assessment: _____

2) Payment Schedule:    $ _____ per _____ .

3) Number of payments remaining as of _____ .
(Date)

Total Special Assessment balance remaining: $ _____ .

The ☐ Seller agrees to pay at the time of settlement OR ☐ Buyer agrees to assume any existing or levied but not yet collected special assessments.

**4.    CONDOMINIUM INSTRUMENTS AND CERTIFICATE OF CONDOMINIUM BOARD:** This transaction consists of a resale of a condominium unit by a unit owner (i.e., the Seller) other than the declarant. Seller agrees to obtain from the unit owner's association and deliver to Buyer, on or prior to the tenth (10th) business day following the ratification date of this Contract by Buyer, a copy of the condominium instruments (i.e., recorded declaration, bylaws, plats and plans and all exhibits, schedules, certifications and amendments to any of same) and a certificate setting forth the following:

**A.    **A statement, which need not be in recordable form, setting forth the amount of any unpaid assessments levied against the Unit;

©2005 The Greater Capital Area Association of REALTORS®, Inc.

This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.

Previous editions of this Form should be destroyed.

Bayer & Kaufman LLP 2011 Pennsylvania Avenue, NW, 5th floor, Washington DC 20006
Phone: (202) 466-4747        Fax: (202) 466-2020        Mark Bayer                                                              DAMON

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

**B.** If applicable, a statement, which need not be in recordable form, certifying to the Board's waiver of, or failure or refusal to exercise, any rights of first refusal or other restraints on free alienability of the Unit which may be contained in the Condominium instruments;

**C.** A statement of any capital expenditures anticipated by the unit owners' association within the current or succeeding 2 fiscal years;

**D.** A statement of the status and amount of any reserves for capital expenditures, contingencies; and improvements, and any portion of such reserves earmarked for any specified project by the Condominium Board;

**E.** A copy of the statement of financial condition for the unit owners' association for the most recent fiscal year for which such statement is available, and the current operating budget, if any;

**F.** A statement setting forth what insurance coverage is provided for all unit owners by the unit owners association and a statement whether such coverage includes public liability, loss or damage, or fire and extended coverage insurance with respect to the Unit and its contents;

**G.** A statement that any improvements or alterations made to the Unit; or the limited common elements assigned thereto the Seller are not in violation of the condominium instruments;

**H.** A statement of the remaining term of any leasehold estate affecting the Condominium or the Unit and the provisions governing any extension or renewal thereof; and

**I.** The date of issuance of the certificate.

**5.** **CONDOMINIUM ASSOCIATION APPROVAL:** If this sale is subject to approval by or right of refusal of the Council Of Unit Owners or Board Of Directors of the Condominium, in the event such approval is denied or such right of first refusal is exercised by such Council or Board, this Contract shall be null and void and the Buyer's deposit shall be refunded without delay or deduction therefrom.

**6.** **ASSUMPTION OF CONDOMINIUM OBLIGATIONS:** Buyer hereby agrees to assume each and every obligation of, to be bound by and to comply with the covenants and conditions contained in the Condominium instruments including the Condominium Bylaws, and with the Rules and Regulations of the Condominium, from and after the date of settlement hereunder.

**7.** **RIGHT TO CANCEL:** Buyer shall have the right for a period of three (3) business days following Buyer's receipt of the condominium documents and statements referred to in Paragraph 4 to cancel this Contract by giving Notice thereof to Seller. In the event that such condominium documents and statements are delivered to Buyer on or prior to the ratification of this Contract by Buyer, such three (3) business day period shall commence upon ratification of this Contract. If the condominium documents and statements are not delivered to Buyer within the 10 business day time period referred to in Paragraph 4, Buyer shall have the option to cancel this Contract by giving Notice thereof to Seller prior to receipt by Buyer of such condominium documents and statements. Pursuant to the provisions of this paragraph, in no event may the Buyer have the right to cancel this Contract after Settlement.

Seller                                          Date
THE FORWARD MOMENTUM GROUP LLC

11-21-06

Buyer                                           Date
DAMON BLUE
DHAMIAN

11/21/06

Seller                                  Date        Buyer                                   Date

©2005 The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of The Greater Capital Area Association of REALTORS®, Inc. and is for use by members only.
Previous editions of this Form should be destroyed.

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com          DAMON



 

## Lead Paint - Federal Disclosure
## Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

RE: <u>2831 11TH STREET, NW, WASHINGTON, DC</u>

Property Address

### LEAD WARNING STATEMENT

Every purchaser/tenant of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller/landlord of any interest in residential real property is required to provide the buyer/tenant with any information on lead-based paint from risk assessments or inspections in the seller's/landlord's possession and notify the buyer/tenant of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase/lease.

### SELLER'S/LANDLORD'S DISCLOSURE (initial)

___ (a)    Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

☑ Seller/Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

___ (b)    Records and reports available to the seller/landlord (check one below):

☐ Seller/Landlord has provided the purchaser/tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

☐ Seller/Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### PURCHASER'S/TENANT'S ACKNOWLEDGMENT (initial)

___ (c)    Purchaser/Tenant has read the Lead Warning Statement above

___ (d)    Purchaser/Tenant has received copies of all information listed above. ☑ Yes ☐ No ☐ None listed

___ (e)    Purchaser/Tenant has received the pamphlet <u>Protect Your Family From Lead in Your Home.</u> ☐ Yes ☐ No

___ (f)    Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### AGENT'S ACKNOWLEDGMENT (initial)

___ (g)    Agent has informed the seller/landlord of the seller's/landlord's obligations Under 42 U.S.C. 4582(d) and is aware of his/her responsibility to ensure compliance.

### CERTIFICATION OF ACCURACY

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| _Signature_ | 11-21-06 | _Signature_ | 11/21/06 |
| Seller/Landlord | Date | Buyer/Tenant | Date |
| THE FORWARD MOMENTUM GROUP LLC | | ~~DAMON~~ BLUE Dhumijan | |

| | | | |
|---|---|---|---|
| Seller/Landlord | Date | Buyer/Tenant | Date |

| | | | |
|---|---|---|---|
| Agent | Date | Agent | Date |

© 2001, The Greater Capital Area Association of REALTORS®, Inc.
This Recommended Form is the property of the Greater Capital Area Association of REALTORS®, Inc. and is for use by
REALTOR® members only.
Previous editions of this Form should be destroyed.

GCAAR FORM # 907 Federal Lead Disclosure — MC & DC                          Page 1 of 1                                              07/01
(Previously form # 500)

**ADDENDUM**                    Dhamian

This addendum forms part of the contract for the purchase and sale 2831 11th Street, NW, Unit #2, Washington, DC 200___ ("Property") by and between ~~DAMON BLUE~~ ("Purchaser") and THE FORWARD MOMENTUM GROUP, LLC ("Seller"), dated November ___, 2006.

1. This contract is contingent upon the occurrence of the following events:

    a.    Seller's successful creation of a condominium regime affecting the building presently occupying Lot 52 in Square 2857;

    b.    the issuance by the District of Columbia government of a certificate of occupancy and a new tax lot number for Purchaser's unit; and

    c.    Seller's completion of renovations to the unit, as described below.

2. Prior to settlement, Seller shall perform the following improvements to the unit, using materials selected by Seller:

(granite countertops shall be among the ~~flooring~~ options provided to purchase

    a.    installation of updated kitchen cabinets and countertops;

    b.    replacement of floors (to be selected by Purchaser from alternatives provided by Seller); (hardwood floors shall be among the flooring options provided to purchaser)

    c.    installation of new GE Profile appliances, consisting of stove, refrigerator, microwave oven and dishwasher;

    d.    updating of bathrooms (components to be selected by Purchaser from alternatives provided by Seller); and

    e.    installation of a deck off the kitchen.

3. Closing shall occur on a date selected by Seller no later than ~~45~~ sixty days after the fulfillment of all contingencies and the completion of the improvements described above. If all contingencies have not been ~~removed~~ fulfilled or if the improvements are not completed by ~~July 31,~~ May 31 2007, Purchaser shall have the option of canceling ~~this~~ contract and receiving the return of his earnest money deposit.

4. All other terms of the contract shall remain in full force and effect.

Purchaser:

_____ (Seal)
~~DAMON BLUE~~
Dhamian

Dated: 11/21/06

Seller:
THE FORWARD MOMENTUM GROUP, LLC

By: _____ (Seal)
AUTHOR JOHNSON, Manager

Dated: 11-21-06

## **ADDENDUM**

This addendum forms part of the contract for the purchase and sale of 2831 11th Street, NW, Unit #2, Washington, DC ("Property") by and between Dhamian Blue ("Purchaser") and The Forward Momentum Group, LLC ("Seller"), dated November 21, 2006.

This addendum replaces in full paragraph 4.B. on page 2 of 10 of the contract as follows:

The Deposit will be placed in an Escrow Account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction. This account will be interest bearing. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Purchaser agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

Seller may withdraw any amount ("the Escrow Loan Amount") up to $10,000 in funds from the Escrow Account discussed in the paragraph above as necessary, and any such withdrawal shall be deemed a loan from Purchaser to Seller. The Escrow Loan Amount, in addition to any interest that would have accrued under the prevailing Escrow Account interest rate as applied to the initial Deposit of $15,000, shall be repaid at Settlement in the form of cash, a cashier's check, or by way of an off-set of the Sales Price.

All other terms of the contract shall remain in full force and effect.

Purchaser:

Dhamian A. Blue

Dated: _12/1/06_

Seller:
The Forward Momentum Group, LLC

By: _____

Author Johnson

Dated: _12-1-06_

**PROMISSORY NOTE**

$14,500.00                                                    December 5, 2006

FOR VALUE RECEIVED, the undersigned, Forward Momentum Group, LLC (the "Borrower") hereby promises to pay to the order of Dhamian A. Blue (the "Lender") the principal sum of Fifteen Thousand Dollars ($14,500) upon demand with interest from the date hereof until paid at the rate of two percent (2 %) per annum on the unpaid balance. Said principal and interest is payable as follows:

**Borrower and Lender have entered into a sales contract for Lender to Purchase Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"): Block Square 2857, located at 2831 11th Street, NW, Unit #2, Washington, DC, 20001, (the "Contract") wherein, Lender delivered a deposit of $15,000 ("Escrow Deposit") to Seller's Escrow Agent, Bayer & Kaufman, LLP to be placed in an escrow account of the Escrow Agent. Borrower will withdraw $14,500 as a loan from the Escrow Deposit to use for the purpose of developing, renovating or improving the Property for sale to Purchaser. Interest will begin to accrue on the loaned funds upon the date of execution of this Note.**

**Borrower agrees to repay the full $14,500 loan and the interest accrued thereon upon demand by Lender at Settlement of the Property in readily available funds on the date of Settlement of the Contract or by no later than May 31, 2007. Upon payment, this Promissory Note shall be deemed paid in full and Borrower shall be released and shall not be obligated to pay to Lender any amounts or debts under this Promissory Note. If the Settlement of the Contract is not closed or accomplished by May 31, 2007, Lender shall have the right to immediately demand payment in full of the $14,500 and interest due thereon, and Borrower agrees to repay said amount upon Lender's demand.**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to Lender under this Note, a Second Deed of Trust (the "Security Instrument"), dated the same date as this Note, protects the Lender from possible losses which might result if Borrower does not keep the promises which he has made in this Note. That Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts he owes under this Note

This Promissory Note was negotiated and consummated in the District of Columbia and it is understood and agreed that the legality, enforceability, and construction hereof shall be governed by District of Columbia law, and to the extent applicable, by the laws of the United States of America. Venue for any action to enforce this Promissory Note shall be in the Federal and State courts located in the District of Columbia.

Any notice to Borrower shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Borrower at Borrower's designated address. Any notice to Lender shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Lender at Lender's designated address.

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. The Note Holder may enforce its rights under this Note against each person individually or against all together. This means that any one signatory may be required to pay all of the amounts owed under this Note.



IN WITNESS WH...EOF, this promissory note is executed...ective as of the date first
set forth above.

Case 1:08-cv-00416-EGS    Document 1-2    Filed 03/10/2008    Page 19 of 21

**BORROWER:**

FORWARD MOMENTUM GROUP, LLC
BY:



_____
Author James Johnson, Managing Director

_____
Witness

4-3-07
_____
Date

PERSONAL GUARANTOR

_____
Author James Johnson

_____
Witness

4-3-07
_____
Date

# DHAMIAN A. BLUE
1545 18th Street, NW
Washington, DC 20036

June 7, 2007

**VIA HAND DELIVERY**

Arthur Johnson
Forward Momentum Group, LLC
1612 15th Street, NW
Washington, DC 20009

Re:   2831 11th Street Sales Contract

Dear Arthur,

The purpose of this letter is to memorialize our discussions regarding the above-referenced property, and set forth each of our obligations and expectations going forward. As you know, we entered into a Sales Contract on November 14, 2006, wherein I agreed to pay $399,999.00 for the "upstairs unit" of the property located at 2831 11th Street, NW, Washington, DC, 20001. I made a $15,000.00 earnest money deposit that we agreed would be held in escrow. Pursuant to a subsequently executed Promissory Note, dated December 6, 2006, and an oral modification thereof, I agreed to allow you to borrow the full amount of the earnest money so that you could continue construction on the unit. The November 14 Sales Contract and the Promissory Note state that the return of the escrow funds and sale of the subject property (*ie*, closing) were to occur on or before May 31, 2007.

In recent discussions, you have expressed your desire to live in the subject property. In light of this, you and I have agreed that you will return the $15,000.00 earnest money deposit that I paid, and pay an additional $15,000.00 for the termination of the Sales Contract. In exchange for such payment, I will forego any legal claim or otherwise to equitable title to the subject property upon your ~~delivery to me of the~~ execution of this agreement monies described herein.  July 7  (AJ)  DB

Pursuant to our discussions, and this Letter Agreement, you agree to return the $15,000.00 earnest money deposit on or before ~~June 15,~~ 2007. You agree to deliver the remainder of the $15,000.00 payment on or before ~~july 6,~~ 2007. September 1

**EXHIBIT**

_C_

If you agree to the terms set forth in this Letter Agreement, please sign and initial below.

Sincerely,

Dhamian A. Blue

Agreed to and accepted by:

Arthur Johnson on behalf of
Forward Momentum Group, LLC

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Dhamian A. Blue | The Forward Momentum Group, LLC<br>Author J. Johnson |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___88888___<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___11001___<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |
|---|---|
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
| Dhamian A. Blue<br>Thigpen, Blue, Stephens & Fellers<br>Raleigh, NC 27601 | |

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

⊙ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ⊙ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ⊙ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☒ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/** **2255** | ○ **H. Employment** **Discrimination** | ○ **I. FOIA/PRIVACY** **ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA** **(non-employment)** | ○ **L. Other Civil Rights** **(non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. s. 1332(a)(1) action for damages, or in the alternative, specific performance, based on breach of a real estate contract.

**VII. REQUESTED IN COMPLAINT** — CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    **DEMAND $** 785,000    Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY** — (See instruction) YES ☐    NO ☐    If yes, please complete related case form.

**DATE** 3/6/08    **SIGNATURE OF ATTORNEY OF RECORD** _Stuart. Blue_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.